PENNSYLVANIA THRESHERMEN & FARMERS' MUTUAL CASUALTY INSURANCE CO. *v.* ROBERT W. MESSENGER

[No. 12, October Term, 1942.]

*Decided January 12, 1943.*

The cause was argued before BOND, C. J., SLOAN, DELAPLAINE, COLLINS, MARBURY, and GRASON, JJ.

*Frederick W. C. Webb,* with whom were *Woodcock, Webb, Bounds & Travers* on the brief, for the appellant.

*Ernest C. Clark,* with whom were *Bailey & Clark* on the brief, for the appellee.

DELAPLAINE, J., delivered the opinion of the Court.

Pennsylvania Threshermen & Farmers' Mutual Casualty Insurance Company, appellant, issued a liability insurance policy in 1939 to Robert W. Messenger, a produce hauler of Salisbury, appellee, insuring him against legal liability for bodily injuries or death up to $5,000 for one person and up to $10,000 for one accident, and against legal liability up to $5,000 for damage to property of others, caused by the operation of his Diesel motor truck and Trailmobile trailer while within a radius of 500 miles from Salisbury.

On March 14, 1940, during the life of the policy, the insured, while operating his motor truck in Yamassee, South Carolina, struck and damaged a filling station. The owners of the building attached his vehicles and recovered judgment against him for $1,267.80 for damages and $228.65 for storage and costs. The insurance company, while it had agreed to defend all suits brought against the insured on claims covered by the policy, refused to defend the attachment suit and to pay the judgment, claiming that Yamassee is not within a radius of 500 miles from Salisbury. Upon execution of the judgment, the Sheriff of Hampton County, South Carolina, sold the truck and trailer at auction for $537. After paying the storage charges and costs of suit from the proceeds of sale, the Sheriff paid the remainder upon the judgment.

The insured thereupon brought the instant suit in the

Circuit Court for Wicomico County, alleging that he had lost his damaged truck and trailer as the result of breach of contract by the company. He claimed the sum of $1,420 for the loss of the truck and $200 for the loss of the trailer. The jury awarded him a verdict for $1,500. This appeal is from the judgment entered upon the verdict.

The appellant contends that no competent evidence was produced at the trial to show that Yamassee is within a radius of 500 miles from Salisbury. It appears from the record, however, that Dr. Lloyd Straughn, professor of science in the State Teachers College at Salisbury, testified that he had computed the distance between Salisbury and Yamassee to be exactly 490.37 miles. Dr. Straughn, who received the degree of doctor of philosophy at the Johns Hopkins University, explained that in his study of trigonometry he learned how to measure distances on the earth's surface, and that he can compute the distance between two towns if he knows their latitude and longitude. He ascertained the latitude and longitude of Salisbury and Yamassee from maps of the United States Geodetic Survey. It is obvious that he was qualified to testify as an expert on the subject. The appellant's objection is that the Geodetic Survey maps were not produced at the trial. It is a familiar rule of evidence that a witness, in order to qualify as an expert, should have such special knowledge of the subject on which he is to testify that he can give the jury assistance in solving a problem for which their equipment of average knowledge is inadequate. It is sufficient if the court is satisfied that the expert has in some way gained such experience in the matter as would entitle his evidence to credit. *Wilson v. State*, 181 Md. 1, 26 A. 2d 770, 773. It is not a ground for excluding the testimony of an expert that he bases his statements in whole or in part upon what he has read, provided that his reading can be assumed to constitute part of his general knowledge adequate to enable him to form a reasonable opinion of his own. A witness is qualified to testify as an expert when he exhibits such a degree of knowledge as to make it appear that his opinion is of some value, whether such

knowledge has been gained from observation or experience, standard books, maps of recognized authority, or any other reliable sources. The knowledge of an expert in any science or art would be extremely limited if it extended no further than inferences from happenings within his own experience. His testimony is admitted because it is based on his special knowledge derived not only from his own experience, but also from the experiments and reasoning of others, communicated by personal association or through books or other sources. *Consolidated Gas Co. v. City of Baltimore,* 105 Md. 43, 55, 65 A. 628, 632, 121 *Am. St. Rep.* 553; *Perkins v. United States,* 228 F. 408, 419. In the case at bar Dr. Straughn explained the source of his information and the method by which he computed the distance. His testimony was admissible, even though no maps or other records of the Geodetic Survey were produced at the trial.

The appellant also complains of the trial court's construction of the word "radius." A radius, as defined in geometry, is a straight line extending from the center of a circle or sphere to its circumference or surface. In common usage the word "radius" ordinarily signifies a distance or circular limit defined by a radius of specified length. It has been held that where a contract defines a territory as being within a radius of a certain number of miles from a certain place, the natural presumption is that the parties intended the outmost limits of the territory to be at equal distance from that place in every direction. *Cook v. Johnson,* 47 Conn. 175, 36 *Am. Rep.* 64; 36 *Words and Phrases,* Perm. Ed., p. 8. Of course, it may sometimes be necessary to deviate from the usual construction of the term on account of the context. For illustration, in a case where the vendors of a store in the City of Philadelphia agreed not to engage in similar business "within a radius of five city blocks" from the store, the Pennsylvania Supreme Court found that it was necessary to construe the contract by counting five blocks in the nearest traveled way. *Kunin v.*

*Weller,* 296 Pa. 161, 145 A. 719. In a later case, however, where a physician agreed not to practice medicine "within a radius of fifteen miles" from a certain borough in Pennsylvania, the court refused to construe the contract to mean the nearest traveled road, because it was possible to compute the distance in the usual way by direct line. The court said in that case: "If the defendant * * * intended to describe a district irregular in shape and extent, as dependent on accessibility by public roads, he should have said so. Such a boundary would necessarily have elements of uncertainty, as there might be dispute about which of several was the nearest traveled public way." *Johnson v. McIntyre,* 309 Pa. 191, 163 A. 290, 291. The reasoning of that decision applies with special force in the present case, where the radius extends for a distance of 500 miles. The language employed to define the territory in which the policy is applicable is simple and unambiguous. The ordinary meaning of the word "radius" is not varied by the context, and the natural construction can be readily and definitely applied. We therefore construe the word "radius" according to its usual meaning, making the policy applicable with 500 miles by direct line from Salisbury, rather than by the nearest traveled road.

The final controversy concerns the amount of damages allowable to the insured. This policy does not insure against damage to the insured's vehicles; but the refusal of the insurance company to defend the attachment suit and to pay the damages resulting from the accident in South Carolina caused the insured to lose his truck and trailer. Unquestionably the company's failure to perform these obligations constituted a breach of contract. The rule for the measure of damages for breach of contract, as laid down in England by Baron Alderson in the leading case of *Hadley v. Baxendale,* 9 Exch, 341, 5 Eng. Rul. Cas. 502, 504, has been adopted in the State of Maryland as well as generally by the course of the United States. The rule is that the amount of damages recoverable for breach of contract is such as may reason-

ably be considered as arising naturally from the breach of contract itself, or such as may reasonably be supposed to have been in the contemplation of both parties, at the time they made the contract, as the probably result of the breach of it. *Winslow Elevator & Machine Co. v. Hoffman*, 107 Md. 621, 635, 69 A. 394, 396, 17 *L. R. A., N. S.*, 1130; *Primrose v. Western Union Telegraph Co.*, 154 U. S. 1, 14 S. Ct. 1098, 1106, 38 *L. Ed.* 883, 894, 15 *Am. Jur., Damages*, Sec. 52. Ordinarily a plaintiff in an action on an insurance policy cannot recover special damages for the detention of money due to him under the policy beyond what the law allows as interest. *New Orleans Insurance Co. v. Piaggio*, 16 Wall. 378, 21 *L. Ed.* 358, 360. But when an insurer wilfully refuses to perform the obligations required by a liability insurance policy, such as to defend a suit in behalf of the insured or to pay a judgment against him, in consequence of which the insured suffers loss, the court can compel the insurer to respond in damages for such loss. *Miholevich v. Mid-West Mutual Auto Insurance Co.*, 261 Mich. 495, 264 N. W. 202, 86 *A. L. R.* 633; *Noshey v. American Automobile Insurance Co.*, 68 F. 2d 808; 29 *Am. Jur., Insurance*, Sec. 1269.

After the appellant was sued by the judgment creditors, it agreed to pay the balance of $959.45 due on the judgment. It is now argued that the insured's damages for breach of contract cannot exceed $537, as that value was established by the sheriff's sale. It is not correct to say, however, that a sheriff's sale is conclusive evidence of the value of the property sold. It is a matter of common knowledge that such sales are made irrespective of market conditions. The trial court was right in refusing to instruct the jury that they should award as damages only the amount for which the truck and trailer were sold by the sheriff. The damages allowed for breach of a contract should compensate the injured person for the loss he has sustained as a result of the breach. The court should endeavor to place the injured person, as far as possible by monetary award, in the position in which he would have been, if the contract had

been properly performed. *Chamberlain v. Baltimore & Ohio R. Co.*, 66 Md. 518, 529, 18 A. 267; *United States v. Behan*, 110 U. S. 338, 4 S. Ct. 81, 28 *L. Ed.* 168.

The appellant further says that the insured's testimony as to the value of his vehicles after the accident was inadmissible. It is a general rule of evidence, quite liberally applied by the courts of this country, that anyone familiar with the value of property is competent to testify as to its value. If a person shows that he has sufficient personal knowledge of motor vehicles to make relevant his opinion regarding the value of the motor vehicle in question, the credibility and weight of his testimony are for the consideration of the jury. *Alabama Power Co. v. Armour & Co.*, 207 Ala. 15, 92 So. 111. It is accordingly held that the owner of any article, whether or not he is generally familiar with the values of such articles, is ordinarily presumed to have such a familiarity with it as to qualify him to testify concerning his estimate of its worth. We adopt the prevailing rule that the testimony of an owner of property as to its value, even though such testimony may be considered to be of trivial importance, may be submitted to the jury. *Shea v. Hudson*, 165 Mass. 43, 42 N. E. 114; 3 *Wigmore on Evidence*, 3rd Ed., Sec. 716. At the trial of this case, the insured testified as follows concerning his familiarity with his vehicles: "I expected to repair the truck and put it back on the road. I had to familiarize myself with every part regarding the damaged portions and undamaged portions." We think the trial court acted correctly in permitting the insured to give his estimate of the value of the various uninjured parts. How much knowledge a witness must possess before he is entitled to express an opinion is a preliminary question which is left largely to the discretion of the trial court, and the ruling thereon will not be disturbed by the Court of Appeals unless clearly erroneous as an abuse of discretion. *Ottenberg v. Ryan & Riley Co.*, 130 Md. 38, 45, 99 A. 984; *Wilson v. State*, 181 Md. 1, 26 A. 2d 770, 774.

*Judgment affirmed, with costs.*