J-A11034-18

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| MICHELLE PRIN AND JOANNE BAST PARTNERS, LLC, MICHELLE PRIN, JOANNE S. BAST AND WILLIAM PRIN | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| BOB'S BEER AND SODA, INC. AND ROBERT E. SHAFFER | : | |
| | : | |
| APPEAL OF:  JOANNE BAST | : | No. 1190 MDA 2017 |

Appeal from the Order Entered September 26, 2017
in the Court of Common Pleas of Adams County
Civil Division at No.:  12-S-1176

| | | |
|---|---|---|
| MICHELLE PRIN AND JOANNE BAST PARTNERS, LLC, MICHELLE PRIN, JOANNE S. BAST AND WILLIAM PRIN | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| v. | : | |
| | : | |
| BOB'S BEER AND SODA, INC. AND ROBERT E. SHAFFER | : | |
| | : | |
| APPEAL OF:  BOB'S BEER AND SODA, INC. AND ROBERT E. SHAFFER | : | No. 1230 MDA 2017 |

Appeal from the Order Entered September 26, 2017
in the Court of Common Pleas of Adams County
Civil Division at No.:  12-S-1176

BEFORE:   STABILE, J., NICHOLS, J., and PLATT*, J.

_____
*   Retired Senior Judge assigned to the Superior Court.

MEMORANDUM BY PLATT, J.:                    **FILED AUGUST 31, 2018**

In these consolidated cross-appeals, the buyer and the seller of a beer distributorship challenge various elements of the trial court's grant, after a bench trial, of injunctive relief, and attorney fees, but not monetary damages, in the enforcement of a covenant not to compete.[1]  Appellant, Joanne S. Bast, claims injunctive relief was not necessary at all, and in any case, the court should not have extended its duration.[2]  She also challenges the court's award of attorney fees to Appellees, Bob's Beer and Soda, Inc. and its president, Robert E. Shaffer, claiming they were not the prevailing parties.  Appellees assert that the court should have awarded them monetary damages as well

---

[1] Appellant purports to appeal from the order filed June 29, 2017, denying motions for post-trial relief.  (**See** Notice of Appeal, 7/28/17; **see also** Appellant's Brief, at 2).  However, the appeal properly lies from the final order. **See Commonwealth v. Harris**, 32 A.3d 243, 248 (Pa.2011); **see also** Pa.R.A.P. 341(a).  Here, the Prothonotary entered judgment on September 26, 2017.  (**See** Rule 36 Notice of Entry of Judgment, 9/26/17).  In spite of the premature filing, we may review this matter because a final order has been entered.  **See Commonwealth v. Tillery**, 611 A.2d 1245, 1247 (Pa. Super. 1992), *appeal denied,* 616 A.2d 984 (Pa.1992) (reviewing premature appeal where final order entered thereafter); **see also** Pa.R.A.P. 905(a)(5) ("A notice of appeal filed after the announcement of a determination but before the entry of an appealable order shall be treated as filed after such entry and on the day thereof.").  We have amended the caption accordingly.

[2] Although the caption of the appeal includes Michelle Prin and Joanne Bast Partners, LLC, Michelle Prin and William Prin, as additional Appellants, the trial court essentially decided in favor of the other named Appellants (plaintiffs in the underlying declaratory judgment action).  In fact, only Ms. Bast appealed. (**See** Appellant's Brief, at 9 n.2).  However, Appellees included all of the original plaintiffs in their answer and counterclaim.

as injunctive relief. They claim error in the trial court's refusal to enforce the restrictive covenant against other presumptively interested parties who were not signers of the Purchase Agreement at issue. Finally, they assert error in the trial court's refusal to award the entire amount of attorney fees requested. We affirm.

The underlying facts are not in substantial dispute. On or about May 5, 2008, Joanne Bast signed the Purchase Agreement by which Yingling's Thrifty Dutch Beverage, Inc. sold the assets of its beer distributorship (including the real estate and fixtures, plus goodwill and license) to Appellee Robert E. Shaffer for $1,500,000.00.

Appellant Joanne S. Bast owned 50% of the shares of the corporation. Patricia Prin owned the other 50%. Patricia Prin is the former wife of Dr. William Prin. They divorced in 2005 (or 2006).[3] By virtue of a marital settlement agreement, Dr. Prin had a residual interest in half of the proceeds to Patricia of the sale of Yingling Thrifty Dutch Beverage.

The sole signatory to the Purchase Agreement for Seller was Joanne S. Bast. Ms. Bast initialed each page of the agreement and signed at the end as the designated "Seller." The real estate agent involved in the transaction

---

[3] Both years are given in the record. However, there is no dispute that the Prins were divorced by the time of the sale, and their respective rights to share in the proceeds of the sale were based on the marital settlement agreement. Therefore, the exact year is not critical to the issues on appeal, or our disposition.

testified that he provided the Purchase Agreement based on a standard form used in his employer's real estate firm. The Sellers received their full asking price. (**See** N.T. Trial, 10/27/15, at 82).

Notably, for the issues raised on appeal, the Agreement contained a covenant not to compete, which prohibited the Seller from competing "directly or indirectly" with "Buyer," Appellees, within a ten-mile radius of the existing business location for a period of ten years from the date of settlement of the sale.[4]

In short order, Shaffer re-named the business "Bob's Beer," dismissed the previous manager, repainted and made other changes in décor, and began

_____

[4] It deserves mention that counsel for Defendants/Appellees apologized at trial for the "poor quality" of the copy of the Agreement. (N.T. Trial, 10/27/15, at 9). In fact, all of the copies provided are in deplorable condition and nearly illegible. However, as there is no dispute about the specific text of the covenant, our review is not impeded. The covenant not to compete, in the form agreed-on by the parties, states in pertinent part:

6.) Other terms and Conditions:

* * *

(vii) Seller agrees that from the date of settlement, Seller shall not compete directly or indirectly in the same or similar type of business with Buyer within a ten (10) mile radius of the existing business for a period of ten (10) years. This provision shall not apply to the existing business known as HBO, Inc. located at 1307 Baltimore Pike, Hanover, PA 17331.

(Purchase Agreement, 5/05/08, at 2 ¶ 6(vii); **see also** Appellant's Brief, at 11; Appellees' Brief, at 3). The exception refers to a separate beer distributorship owned by Dr. Prin.

operating in the same location. On March 13, 2012, Ms. Bast, in partnership with Michelle Prin, (the succeeding wife of Dr. Prin), as "Michelle Prin and Joanne Bast Partners, LLC," purchased "Beer Express" and eventually opened a beer distributorship about three miles (3.6 miles) west of the original Thrifty Dutch Beverage−now Bob's Beer−location. They renamed the Beer Express, the "RT 116 Beer Xpress."

Shaffer asserted a violation of the covenant not to compete, and threatened a lawsuit unless they stopped operating RT 116. Instead, plaintiffs, Michelle Prin and Joanne Bast partners, LLC, Michelle Prin, Joanne S. Bast and Dr. William Prin, brought the declaratory judgment action underlying this appeal, claiming the covenant not to compete was illegal, and seeking to have the court declare it unenforceable. (**See** Complaint for Declaratory Judgment, 8/03/12, at 8). Appellees answered and counterclaimed for injunctive relief, alleging that the remaining parties "conspired" with Ms. Bast to violate the non-competition provision, and asserting that "a remedy at law for damages is not adequate." (Appellees' Answer and New Matter, 9/05/12, at ¶ 66; **see also** ¶¶ 64-65).

At trial, and on appeal, Ms. Bast maintained that she was an artist, not a businessperson, and that her role in both of the beer distributorships at issue was essentially that of a passive investor. She acknowledged signing the Purchase Agreement, but testified that she understood the agreement to be in the nature of a working draft, as part of an ongoing negotiation. (**See** N.T.

Trial, 10/27/15, at 80-81). The trial court found her explanation "insufficiently credible." (Trial Ct. Op., at 4).

Moreover, our review of the record reveals that despite Appellant's claimed reliance on the assurances of the real estate agent, there are several references to counsel, and no indication that Ms. Bast could not have consulted counsel before signing, had she chosen to, on the questions she now raises on appeal.

Shaffer testified that he would not have purchased the beer distributorship without the restrictive covenant. The trial court found him credible. (*See id.* at 6).

After the bench trial, the court found in favor of all plaintiffs, except Ms. Bast. The trial court decided that Ms. Bast, the sole signer for Thrifty Dutch Beverage in the sale of that beer distributorship to Shaffer, had violated the covenant not to compete by going into partnership with Ms. Michelle Prin in opening RT 116. Additionally, the court found that Appellees had established a causal connection between the violation of the non-compete agreement by Ms. Bast, and drops in Appellees' business, sufficient to support injunctive relief.

Nevertheless, the court further found that Appellees, despite "a noble effort" to prove actual damages, could only provide anecdotal information about the ebb and flow of business. (*Id.* at 11). Tax returns and related business records showed fluctuations (both up and down) in revenue and

- 6 -

profit which did not directly correlate with the opening and operation of RT 116. The court decided that the anecdotal evidence of loss based on Ms. Bast's involvement with RT 116 was too speculative and insufficient to establish a claim to economic damages requested by Appellees. (*See id.* at 12). The court also noted that in their request for injunctive relief, the Appellees averred that "a remedy at law for damages is not adequate." (Appellees' Answer and New Matter, at ¶ 66; *see also* Trial Ct. Op., at 11). Accordingly, the court declined to award monetary damages. However, it enjoined Appellant from violating the covenant not to compete clause for a **new** term of ten years beginning with the date of the court order.

The court also granted Appellees' attorney fees, but in the amount of $16,853.90, less than the $27,000 requested. Both parties dispute the court's award of attorney fees. Appellees claim that the trial court improperly reduced the amount of their fee award. Appellant complains that on her comparison of relief sought to relief granted, Appellees were not the "prevailing party," and therefore should get no award for attorney fees at all.

The agreement of sale included the following pertinent provision:

> 33. **Attorneys' Fees**. In any litigation, arbitration or other legal proceeding, which may arise between any of the parties hereto, including Agent, the prevailing party shall be entitled to recover its costs, including [illegible] costs, costs of arbitration, [illegible] reasonable attorney's (sic) fees in addition to any other relief in which such party may be entitled.

(Purchase Agreement, at 5 of 7).

Ms. Bast timely appealed, following the denial of post-trial motions. Appellees cross-appealed. Both parties filed a Rule 1925(b) statement of errors.[5] The trial court filed its opinion on October 30, 2017. *See* Pa.R.A.P. 1925.

Appellant presents three questions for our review:

> A. Did the trial court err in granting the Appellees' claim for injunctive relief against Joanne Bast where the Appellees did not prove the injunction is reasonably necessary to prevent harm to their legitimate business interests?
>
> B. Did the trial court err in granting a ten-year injunction from the date of the order where the length of the injunction is not reasonably necessary to protect a legitimate business interest and the contract did not include a tolling provision?
>
> C. Did the trial court err in awarding attorneys' fees to the Appellees where they were not the prevailing parties in the litigation?

(Appellant's Brief, at 4).

Appellees also present three questions:

> D. Did the [t]rial [c]ourt err in dismissing Appellees' claim for economic damages against the Appellants, as there was sufficient evidence in the record to support that claim?
>
> E. Did the [t]rial [c]ourt err in not enforcing the restrictive covenant against Appellants William Prin and Michelle Prin as co-conspirators as there was sufficient evidence in the record to prove that both of them knew of the covenant not to compete, yet aided and assisted Appellant Joanne Bast in her willful and intentional violation of the covenant?

---

[5] It bears noting that Appellant's statement of errors raised twelve issues, framed as four questions with multiple sub-parts. (*See* Rule 1925(b) Statement of Matters Complained of on Appeal, 8/24/17).

F Did the [t]rial [c]ourt err in not awarding Appellees all of the counsel fees requested?

(Cross-Appellants' [Appellees'] Brief, at 2).

The legal principles applicable to the parties' claims are well-settled.

Our scope of review in a non-jury trial is limited to whether findings of fact are supported by competent evidence and whether the trial court committed an error of law. With respect to factual conclusions, this Court may reverse the trial court if its findings of fact are predicated on an error of law or are unsupported by competent evidence in the record.

*Szymanski v. Dotey*, 52 A.3d 289, 292 (Pa. Super. 2012) (citations and internal quotation marks omitted).

In reviewing the factual determinations of the trial court sitting as finder of fact, we must attribute to them the same force and effect as a jury's verdict. Accordingly, we view the evidence and all reasonable inferences therefrom in the light most favorable to the . . . verdict winners. We will only upset the findings if there is insufficient evidence, or if the trial court committed an error of law. In reviewing the findings, the test is not whether we would have reached the conclusion of the trial court, but rather whether we reasonably could have reached the same result. We will not substitute our judgment for that of the trial court.

*Rizzo v. Haines*, 555 A.2d 58, 61 (Pa. 1989) (citations omitted).

The determination of damages is a factual question to be decided by the fact-finder. This duty of assessing damages is within the province of the fact-finder and should not be interfered with unless it clearly appears that the amount awarded resulted from partiality, caprice, prejudice, corruption or some other improper influence. The fact-finder must assess the worth of the testimony, by weighing the evidence and determining its credibility, and by accepting or rejecting the estimates of the damages given by the witnesses. In reviewing the award of damages, the appellate courts should give deference to the decisions of the trier of fact who is usually in a superior position to appraise and weigh the evidence.

*Delahanty v. First Pennsylvania Bank, N.A.*, 464 A.2d 1243, 1257 (Pa. Super. 1983) (citations omitted).

"Under the American Rule, applicable in Pennsylvania, a litigant cannot recover counsel fees from an adverse party unless there is express statutory authorization, a clear agreement of the parties, or some other established exception." *Trizechahn Gateway LLC v. Titus*, 601 Pa. 637, 652, 976 A.2d 474, 482–83 (Pa. 2009).

"By now it is hornbook law that the reasonableness of the fee is a matter for the sound discretion of the lower Court and will be changed by an appellate Court only when there is a clear abuse of discretion." *In re LaRocca's Trust Estate*, 246 A.2d 337, 339 (Pa. 1968) (citations and footnote omitted).  This Court has further explained:

> We have a limited power of review of court awarded fees. As the Supreme Court has so frequently stated, the responsibility for setting such fees lies primarily with the trial court and we have the power to reverse its exercise of discretion only where there is plain error.  Plain error is found where the award is based either on factual findings for which there is no evidentiary support or on legal factors other than those that are relevant to such an award. The rationale behind this limited scope of review is sound.  It is the trial court that has the best opportunity to judge the attorney's skills, the effort that was required and actually put forth in the matter at hand, and the value of that effort at the time and place involved.

*Gilmore by Gilmore v. Dondero*, 582 A.2d 1106, 1108–09 (Pa. Super. 1990) (citations omitted).

Here, in Appellant's first claim, she challenges the trial court's grant of injunctive relief.  She maintains that Appellees did not prove the injunction is

reasonably necessary to prevent harm to their legitimate business interests. We disagree.

Preliminarily, we note that many of the cases cited by Appellant in support of her argument actually involve enforcement of covenants not to compete in the context of an employment relationship. (*See, e.g.*, Appellant's Brief, at 18-19) (citing *WellSpan Health v. Bayliss*, 869 A.2d 990, 993 (Pa. Super. 2005) (physician ex-employee); *Hess v. Gebhard & Co. Inc.*, 808 A.2d 912, 914 (Pa. 2002) (insurance agent employee); *Scobell Inc. v. Schade*, 688 A.2d 715, 716 (Pa. Super. 1997) (sheet metal shop employee for HVAC firm). Appellant would have us employ the wrong test.

As nominally acknowledged by Appellant, (*see* Appellant's Brief, at 19), Pennsylvania law has long recognized a distinction between the greater hardship imposed by a restrictive covenant on an employee, or former employee, and enforcement of a covenant in the sale of a business context. *See Morgan's Home Equip. Corp. v. Martucci*, 136 A.2d 838, 846 (Pa. 1957) (sales employees).

Our Supreme Court noted that the "mobility of capital" enables a business investor to make use of investment funds more easily "in other localities and in other industries." *Id.*

In view of this greater hardship imposed on an employee, general covenants not to compete ancillary **to employment** are subject to a more

stringent test of reasonableness than is applied to restrictive covenants ancillary to the sale of a business. *See id.*

The standard of review for a restrictive covenant ancillary to the sale of a business is as follows:

> The law in this Commonwealth for more than a century has been that in order to be enforceable a restrictive covenant must satisfy three requirements; (1) the covenant must relate to either a contract for the sale of goodwill or other subject property or to a contract for employment; (2) the covenant must be supported by adequate consideration; and (3) the application of the covenant must be reasonably limited in both time and territory.

*Piercing Pagoda, Inc. v. Hoffner*, 351 A.2d 207, 210 (Pa. 1976) (citations omitted).

> General covenants not to compete which are ancillary to the sale of a *business* serve a useful economic function; they protect the asset known as 'good will' which the purchaser has bought. Indeed, in many businesses it is the name, reputation for service, reliability, and the trade secrets of the seller rather than the physical assets which constitute the inducements for a sale. Were the seller free to re-enter the market, the buyer would be left holding the proverbial empty poke. When restrictive covenants are limited to the area of potential competition with the purchaser and limited in time to the period required for the purchaser to establish his own customer following, then they are [enforceable] although a partial restraint upon the free exercise of trade.

*Morgan's Home Equip.*, *supra* at 846.

Here, the covenant relates to the sale of goodwill ancillary to the purchase of a business, satisfying the first requirement. *See Piercing Pagoda*, *supra* at 210. Secondly, the covenant was supported by adequate consideration. The parties allocated almost $775,000 to good will and license. (*See* Trial Ct. Op., at 6).

Therefore, the sole remaining requirement is that the covenant must be reasonably limited in both time and territory. The trial court found here that both limitations were reasonable. (*See id.* at 7). Specifically, the court found that in a small, rural marketing area such as Hanover, Pennsylvania, a ten-mile radius was not unreasonable, and a ten-year effectiveness period gave the purchaser a reasonable time to re-coup his investment. (*See id.*). On independent review, we discern no basis on which to disturb the findings of the trial court.

In fact, Appellant fails to develop a specific argument to challenge the order for injunctive relief as **not** reasonably limited with respect to time and territory. Instead, she focuses on her lack of special skills or trade secrets relating to the retail sale-of-beer business, and concludes that Appellees have failed to prove that the restrictive covenant protects customer relationships or good will. (*See* Appellant's Brief, at 23). Appellant's argument is unresponsive, unpersuasive, and does not merit relief.

While trade secrets or special skills could provide an independent basis for a restrictive covenant (especially in an employment context), their absence here does not preclude Appellees' legitimate interest in seeking to maintain

the goodwill for which they had already provided ample consideration.[6]  **_See_**

**_Piercing Pagoda_**, **_supra_** at 210.  Appellant's first claim fails.

In Appellant's second claim, she argues that the ten-year injunction from the date of the trial court's order was not reasonably necessary to protect a legitimate business interest, echoing the theme of her first claim.

The trial court confirms that Appellant failed to develop this claim during post-trial proceedings.  (**_See_** Trial Ct. Op., at 10).  In her brief, Appellant provides nothing more than a blanket citation asserting that all issues raised in the appeal were preserved in the post-trial motion.  (**_See_** Appellant's Brief, at 16).  This Court is not required to scour the record to find evidence to support Appellant's arguments.  We conclude that the trial court properly found that Appellant's second claim is waived.  **_See_** Pa.R.A.P. 302(a).

In her third and final claim, Appellant requests that we reverse the order of the trial court awarding attorneys' fees to Appellees.  She asserts that the court erred in awarding any attorney fees to Appellees, on the ground that

_____

[6] Appellant correctly notes that Appellees chose to differentiate themselves from Thrifty Dutch Beverage by change of name, décor, _etc._  However, whatever the wisdom of these changes as a business decision, these acts alone do not preclude Appellees from enforcing the restrictive covenant. Appellees would still have had a right to enforce the restrictive covenant if Thrifty Dutch had attempted to re-open, say, next door.  Beyond that, the reasonableness of the restrictive covenant is simply a matter of the reasonableness of breadth and duration of the covenant, as discussed in the text and in the trial court opinion.

they were not the prevailing parties in this litigation. (**See** Appellant's Brief, at 4). We disagree.

"Our review of a trial court's award of attorney's fees is limited. We may only consider whether the court palpably abused its discretion in making a fee award." **Oliver v. Irvello**, 165 A.3d 981, 985 (Pa. Super. 2017) (citation and internal quotation marks omitted). As we have already noted, we have the power to reverse the trial court's exercise of discretion in the award of attorney fees only where there is plain error. **See Gilmore by Gilmore**, **supra** at 1108–09.

Here, Appellant maintains that Appellees "were successful on only a small sliver of the relief they sought." (Appellant's Brief, at 43). Relying principally on an unpublished *per curiam* federal case from the Third Circuit, not binding on this Court, Appellant endeavors to compare "the relief sought" to "the relief each litigant actually received." (**Id.** at 42) (citing **PPG Indus., Inc. v. Zurawin**, 52 F. App'x 570, 580 (3d Cir. 2002)).

We do not disagree with the "common sense comparison" approach adopted in **Zurawin**. However, we do find Appellant's application of it to be deficient and unpersuasive. Appellees did not initiate the instant action, even if they had threatened one. Instead, they sought relief in response to the action for declaratory judgment bought by Appellant and her co-plaintiffs.

Appellant's list of six "results" is not only highly subjective but also unduly repetitive, *e.g.*, citing "the failure to obtain money damages" four

separate times in four separate ways out of the six results identified. (Appellant's Brief, at 41, 42). We find more pertinent (and binding) authority in **Oliver**, **supra** at 985: ("The plain meaning of 'prevailing part[y]' is the party who wins the lawsuit.").

> "[P]revailing party," is commonly defined as "a party in whose favor a judgment is rendered, regardless of the amount of damages awarded." While this definition encompasses those situations where a party receives less relief than was sought or even nominal relief, its application is still limited to those circumstances where the fact finder declares a winner and the court enters judgment in that party's favor. . . .

**Profit Wize Mktg. v. Wiest**, 812 A.2d 1270, 1275–76 (Pa. Super. 2002) (citation omitted).

Here, Appellant and the other plaintiffs brought an action for declaratory judgment. The other plaintiffs, who were not a party to the Purchase Agreement, which included the restrictive covenant, "won." They did not appeal.

Appellant, who did sign, "lost." Whether Appellant signed (or intended to sign) in her personal capacity, as a 50% shareholder, or simply with apparent authority to sign on behalf of the corporation, is of reduced significance, as the language is not ambiguous.

Appellant did not dispute that she signed the document, and the trial court found her later, exculpatory explanations less than credible. The terms of the agreement speak for themselves. On the over-arching issue, Appellees plainly prevailed. Appellant sought to have the restrictive covenant declared

unenforceable. The trial court found that it **was** enforceable, as to Appellant. Appellant's third issue does not merit relief.

We now turn to Appellees' three issues. Appellees' first issue claims there was sufficient evidence for monetary damages. Applying our standard of review, we disagree.

As already noted, we attribute the same force and effect to the trial court's factual findings as to a jury verdict. **See Rizzo**, **supra** at 61. Here, the trial court found that Appellees failed to establish a direct causal effect from Appellant's violation of the covenant not to compete to ascertainable monetary damages. (**See** Trial Ct. Op., at 9) ("The inability to itemize such loss through a causal connection between the breach and the damage is obvious in the trial testimony."). On independent review, we discern no basis to disturb the findings of the trial court.

Most conspicuously, Appellees offer only their own fluctuating sales results (as documented in tax returns) for proof of damages. Apparently, Appellees offered no expert analysis. They presented only minimal analysis of the impact of other competing beer distributors, and none concerning general economic conditions.

Without more, attributing 100% of the drop in sales at Bob's Beer to RT 116 is a classic exercise of the fallacious logic of "**post hoc, ergo propter hoc,**" ("after this, therefore because of this"). **See, e.g.**, **Haney v. Pagnanelli**, 830 A.2d 978, 987 (Pa. Super. 2003) (Bender, J., dissenting).

*Post hoc* describes "the fallacy of assuming causality from temporal sequence; confusing sequence with consequence." (*Id.*) (citation omitted). Assuming that something which comes after a prior event is **caused** by the prior event, does not prove a causal connection, it merely assumes it. Appellees' first claim does not merit relief.

Appellees' second claim asserts there was sufficient evidence for the trial court to enforce the covenant not to compete against non-signers, namely Dr. Prin and Michelle Prin. (*See* Appellees' Brief, at 2). Appellees argue that Dr. and Mrs. Prin were "co-conspirators" with Ms. Bast. (Appellees' Brief, at 14). We disagree.

Our standard of review is well-settled. The Pennsylvania Supreme Court set forth the elements of civil conspiracy in ***Thompson Coal Co. v. Pike Coal Co.***, 412 A.2d 466, 472 (Pa. 1979): (**"[It] must be shown that two or more persons combined or agreed with intent to do an unlawful act or to do an otherwise lawful act by unlawful means."**). *Id.* (emphasis added). Proof of malice, *i.e.*, an intent to injure is an essential part of a conspiracy cause of action; this unlawful intent must also be without justification. ***See id.*** Furthermore, a conspiracy is not actionable until "some overt act is done in pursuance of the common purpose or design . . . and actual legal damages result." ***Baker v. Rangos***, 324 A.2d 498, 506 (Pa. Super. 1974) (citations omitted).

Here, Appellees fail to establish the elements of a conspiracy. Appellees argue that both Dr. Prin and Michelle Prin "were aware of the covenant signed by Joanne Bast." (Appellees' Brief, at 14). But mere awareness, even if conceded for the sake of the argument, does not establish the required elements of a conspiracy.

The only Pennsylvania authority Appellees offer in support of their claim is *Sklaroff v. Sklaroff*, 106 A. 793 (Pa. 1919). (*See* Appellees' Brief, at 15). Appellees' reliance on that venerable but rarely cited case is misplaced. In *Sklaroff*, our Supreme Court affirmed a decision finding restraint of trade in an alleged scheme to monopolize a fish smoking and wholesale business which grew out of a family firm. It apparently involved surreptitious funding of a nominally independent competitor by one of the competing family factions. *See Sklaroff*, *supra* at 794.

Here, Appellees fail to develop an argument establishing any meaningful connection between the abbreviated facts given in *Sklaroff* and their own allegation of a general conspiracy in the case before us. In fact, in *Sklaroff*, neither "conspiracy" nor "conspire" is even mentioned. Appellees fail to establish that a conspiracy occurred in this case. Their second claim does not merit relief.

In their third and final claim, Appellees challenge the trial court's decision to award less counsel fees than the full amount requested. As already

noted, under controlling authority, we have only a limited power of review of court awarded fees. ***See Gilmore by Gilmore***, ***supra*** at 1108–09.

Here, the trial court explained that it reduced the attorneys fee requested in recognition of the reality that Appellees had not prevailed against all parties. (***See*** Trial Ct. Op., at 16-17). Appellees' minimal argument is made expressly contingent on prevailing as to the issues of monetary damages, and conspiracy liability for Dr. and Mrs. Prin. (***See*** Appellees' Brief, at 16). However, Appellees did not prevail on either of these claims. The claim for additional counsel fees is moot.

As previously noted, the test on review is not whether we **would** have reached the conclusion of the trial court, but rather whether we reasonably **could** have reached the same result. ***See Rizzo***, ***supra*** at 61. On independent review, we conclude that we reasonably could have reached the same result as the trial court.

Order affirmed.


Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date: 08/31/2018

- 20 -